# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| B.E. CAPITAL MANAGEMENT FUND LP, | ) |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| - against - | ) C.A. No. 12843-VCL |
| | ) |
| FUND.COM INC., | ) |
| | ) |
| Respondent. | ) |

## OPINION

Date Submitted: August 9, 2017
Date Decided: October 4, 2017

Julia B. Klein, KLEIN LLC, Wilmington, Delaware; Jeffrey Chubak, STORCH AMINI PC, New York, New York; *Attorneys for Receiver*.

Philip Gentile; *Claimant Pro Se*.

**LASTER, V.C.**

On October 21, 2016, petitioner B.E. Capital Management Fund LP sought the appointment of a receiver for respondent Fund.com Inc. (the "Company") on the grounds that the Company had abandoned its business. The Company did not respond to the petition. Nor did anyone else. By order dated November 29, 2016, the court entered a default judgment and appointed Thomas Braziel as receiver of the Company (the "Receiver").

The Receiver commenced a process for marshalling the Company's assets, determining its liabilities, and winding up its affairs. The court set a bar date of April 14, 2017, for creditors to file claims. Nonparty Philip Gentile submitted a claim for $497,739. Gentile had served as the Company's CEO from March 1, 2008, until June 18, 2010. He contended that he was entitled to recover the amount sought as a result of various breaches of his employment agreement with the Company (the "Employment Agreement"). Among other breaches, he contended that the Company "stopped making payments in February 2009."[1]

The Receiver rejected Gentile's claim as time-barred. The Receiver reasoned as follows:

> Pursuant to Section 13.1 of the Employment Agreement, the agreement is governed by New York law. The statute of limitations for a breach of contract claim under N.Y. C.P.L.R. § 213 is six years. Mr. Gentile acknowledges in his claim that the Company stopped paying him in February 2009 and did

---

[1] Dkt. 31.

not take legal action against the Company to enforce contractual rights under his Employment Agreement within sex years following accrual of his claim.[2]

Gentile noticed a timely appeal from the Receiver's determination. The Receiver responded by moving to confirm his determination. This decision denies Gentile's appeal and adopts the Receiver's determination as a decision of this court.

Section 296(b) of the Delaware General Corporation Law states:

> Every creditor or claimant who shall have received notice from the receiver or trustee that such creditor's or claimant's claim has been disallowed in whole or in part may appeal to the Court of Chancery within 30 days thereafter. The Court, after hearing, shall determine the rights of the parties.[3]

The Court of Chancery Rules contain a series of provisions that govern receivers. Rule 156 provides that "[e]xceptions to claims shall . . . be heard by the Court upon such notice to the receiver, creditor and exceptant as may be ordered by the Court."[4] Rule 157 states that "[a]t the hearing of exceptions to claims and to accounts, the testimony of witnesses shall be taken in the same manner as is provided for in other causes pending in this Court."[5]

---

[2] Dkt. 41.

[3] 8 *Del. C.* § 296(b).

[4] Ct. Ch. R. 156.

[5] Ct. Ch. R. 157.

2

Section 296 "does not purport to establish the standard by which the court shall allow or disallow a particular claim . . . ."[6] The rules do not specify a standard either. Nor is there any authoritative precedent from the Delaware Supreme Court.

While practicing as an attorney before joining the bench, Vice Chancellor and later Justice Jack B. Jacobs authored two articles on Delaware receiverships that remain authoritative.[7] In one, he simply noted that "[a] creditor is given the statutory right of appeal to the court of chancery from any adverse determination by the receiver."[8] In the other, he observed that "[t]he statute and rules do not specify whether an appeal to the court of chancery is *de novo* or on the record."[9] He went on to state:

> In practice most of the hearings on appeal are on the record. However, the reference in section 296 to a "hearing" and the provision in rule 157 that at the hearing of the exceptions to claims "the testimony of witnesses shall be taken in the same manner as is provided for in other causes pending in this Court" suggest that *de novo* hearings are permissible.[10]

---

[6] 2 Edward P. Welch et al., *Folk on the Delaware General Corporation Law* § 296.02 (6th ed. 2017).

[7] Jack B. Jacobs, *Delaware Receivers and Trustees: Unsung Ministers of Corporate Last Rites*, 7 Del. J. Corp. L. 251 (1982) [hereinafter Jacobs, *Delaware Receivers*]; Jack B. Jacobs, *Receivership Practice in the Delaware Courts*, 6 Del. J. Corp. L. 487 (1981) [hereinafter Jacobs, *Receivership Practice*].

[8] Jacobs, *Receivership Practice*, at 499.

[9] Jacobs, *Delaware Receivers*, *supra*, at 265.

[10] *Id.*; *see id.* (responding to an argument about potential bias on the part of a receiver by noting that "any risk of bias would be safeguarded against by the appellate remedy (particularly the availability of a *de novo* trial").

Justice Jacobs' articles did not otherwise discuss the standard of review. Moreover, answering the question of whether review is *de novo* or on the record does not fully determine the standard of review. Although "[*d*]*e novo* review generally means a new trial or hearing on questions of fact," it is equally possible "to conduct a review *de novo* on the record."[11] This is what the Delaware Supreme Court does when it reviews appeals from decisions that have granted motions for summary judgment or judgment on the pleadings or that dismiss a pleading for failure to state a claim.[12] And to the extent a reviewing court conducts a review "on the record" using a deferential standard, the court may deploy standards involving varying degrees of deference.[13]

---

[11] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[12] *Williams v. Geier*, 671 A.2d 1368, 1375 (Del. 1996) ("Our review of the trial court's determinations in [the summary judgment] context is *de novo*, not deferential, both as to facts and the law. On a summary judgment record (which is essentially a paper record not involving credibility assessments), we are free to draw our own inferences in making factual determinations and in evaluating legal significance of the evidence . . . ."); *W. Coast Opportunity Fund, LLC v. Credit Suisse Sec. (USA), LLC*, 12 A.3d 1128, 1131-32 (Del. 2010) ("[T]he grant of a motion for judgment on the pleadings 'presents a question of law, which we review *de novo*,' to determine whether the court committed legal error in formulating or applying legal precepts. . . . On a motion for judgment on the pleadings this Court's review is limited to the contents of the pleadings." (quoting *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1204 (Del. 1993)); *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001) ("We review *de novo* the dismissal by the Court of Chancery of a complaint under Rule 12(b)(6). The complaint ordinarily defines the universe of facts from which the trial court may draw in ruling on a motion to dismiss." (footnote omitted)).

[13] *See, e.g.*, *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 174 (Del. 2002) ("We cannot conclude on this record that these findings of fact are clearly erroneous."); *Wheatley v. State*, 465 A.2d 1110, 1113 (Del. 1983) ("On the record before us, we find no abuse of discretion in the denial of the motion for mistrial."); *cf. Ivanhoe*

The few extant Delaware authorities suggest that the correct standard is *de novo* review with the court having the ability to consider additional evidence. In *Lasker v. McDonnell & Co., Inc.*, then-Chancellor, later-Justice William T. Quillen considered an appeal from a receiver's preliminary determination rejecting a creditor's claim.[14] The parties agreed to forego a further hearing before the receiver, so the court conducted "a judicial hearing . . . as if on appeal from the Receiver's decision."[15] The court reviewed the creditor's arguments, contention by contention, and analyzed the relevant facts and law, effectively conducting *de novo* review.[16] A more oblique authority is *Hannigan v. Italo Petroleum Corp. of America*.[17] There, after a corporation emerged from receivership, the assignee of a corporate debt filed suit, even though the receiver for the corporation had

---

*P'rs v. Newmont Mining Corp.*, 535 A.2d 1334, 1340-41 (Del. 1987) ("Since the decision below denying Ivanhoe's motion for a preliminary injunction was based entirely on a paper record, the standard and scope of review on appeal requires this Court to review the entire record and draw its own conclusions with respect to the facts if the finds below are clearly wrong and justice requires us to do so.").

[14] 1975 WL 1950 (Del. Ch. July 9, 1975).

[15] *Id.* at *1. Under Section 296, the receiver initially makes preliminary rulings on claims based on the claims notices that creditors and claimants submit. A dissatisfied party can seek a further hearing before the receiver and, if it wishes, present evidence. *See* Jacobs, *Delaware Receivers*, at 265 (describing procedure). Once the receiver makes a final ruling, then a dissatisfied party can appeal to the court. *See id.* The parties in *Lasker* skipped the further hearing before the receiver and proceeded directly to the appeal.

[16] 1975 WL 1950, at *1; *see id.* at *9 (noting as to one issue that "[t]he question before the Court is essentially one of fact" and ruling on the issue *de novo*).

[17] 181 A. 660 (Del. Super. 1935).

disallowed the claim. The question presented was whether the doctrine of *res judicata* barred the creditor from pursuing its claim after the company emerged from receivership.[18] Consistent with Justice Jacobs' observation that the court reviewing the receiver's determination would have discretion to consider additional evidence, the Delaware Superior Court observed that a claimant in a receivership could seek to present evidence beyond "a mere notice of his claim" and could seek to have "his rights in the fund in controversy adjudicated by bringing the matter directly before the court in some appropriate manner."[19]

These decisions indicate that when a court considers an appeal from a receiver's disallowance of a claim pursuant to Rule 296(b), the standard of review is *de novo*, and the court has discretion as to whether to go beyond the record presented to the receiver by conducting an evidentiary hearing. This interpretation finds support in the common law procedures that predated Section 296. At common law, a creditor who wished to dispute a receiver's determination had to move to intervene in the receivership action.[20] If the court

---

[18] *Id.* at 661-62, 664.

[19] *Id.* at 664.

[20] *See* 65 Am. Jur. 2d Receivers § 266 ("If the receiver disallows the claim, the creditors' remedy is to intervene in the action and petition the court for an order directing the receiver to allow the claim." (citing *Wood v. Provident Tr. Co. of Philadelphia*, 152 So. 186 (Fla. 1933)); 2 Ralph Ewing Clark, *A Treatise on the law and Practice of Receivers* § 533 (3d ed. 1959) ("One claiming an interest in the property in the hands of the receiver, or claiming any relief in respect to the possession and control of the res may apply to the court appointing the receiver [and] ask to be made a party . . . ."); *accord Hannigan*, 181 A. at 664 ("Under the old Chancery Practice, [taking an exception to a receiver's

6

permitted intervention, then the creditor litigated the claim before the court as if it were an ordinary civil proceeding.[21] Effectively, under the common law system, the court conducted a *de novo* review on a potentially different record. Section 296 and the related Court of Chancery Rules streamlined the exceptions process by replacing the formality of intervention with a more straightforward procedure.[22] There is no indication, however, that the simplified procedure altered the standard of review that prevailed at common law.

Finally, *de novo* review of a receiver's ruling on a claim comports with the standard of review that the Delaware Supreme Court has directed trial courts to use when reviewing a master's report. "The standard of review for a master's findings—both factual and legal—is *de novo*."[23] "When a receiver by order of court hears testimony and proof and rejects or allows a claim his action is closely analogous to that of a master."[24] It follows

---

determination] was usually done by [the creditor] intervening in and making himself a real party to the action in which the receiver was appointed.").

[21] *See, e.g.*, *Nat'l Sur. Corp. v. Sharpe*, 59 S.E.2d 593, 596 (N.C. 1950) ("The general rule as to evidence in civil actions and proceedings apply on the trial of exceptions to reported findings of a receiver in respect to the validity and priority of claims against the estate of an insolvent debtor."); *see also* 65 Am. Jur. 2d Receivers § 274 ("Where a receiver has denied a claim or the circumstances are such that the claim must be determined by the court, the claimant must support his or her claim by evidence, either documentary or oral, or by a stipulation of facts.").

[22] *See* Clark, *supra*, § 657(b) (discussing the modern practice of exception by motion, noting "the court will generally discourage such claims being presented by the method of intervention").

[23] *DiGiacobbe*, 743 A.2d at 184.

[24] Clark, *supra*, § 657; *see also* 16 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 7927 (Perm. Ed., Rev. Vol. 2015) ("In accepting

7

that the same standard of review would apply when a trial court review the determinations of a receiver.[25]

This decision therefore concludes that a *de novo* standard of review applies when this court considers an appeal from a receiver's determination of a creditor's claim. It bears noting that allowing or disallowing claims is only one of many tasks that a receiver or custodian may perform.[26] This decision has no cause to determine whether the *de novo* standard of review would apply in other contexts. To the contrary, in a situation where a receiver or custodian has exercised judgment regarding the business and affairs of a corporation, such as when selling assets or settling a claim, a more deferential standard of review would seem warranted.[27] Indeed, where the receiver or custodian has exercised the

---

or rejecting the claims of creditors, as well as in filing a report of findings of fact and conclusions of law, a receiver acts like a master, and objections to a receiver's findings of fact and conclusions of law are reviewed de novo by the district court." (citing *United States v. Fairway Capital Corp.*, 433 F. Supp. 2d 226, 231-32 (D.R.I. 2006))

[25] *See United States v. ECC P'rs, L.P.*, 820 F. Supp. 2d 654, 659-660 (D. Md. 2011) (reasoning that federal courts would apply the same *de novo* standard of review in an appeal from a federal receiver as to an appeal from a federal masters); *accord Fairway Capital*, 433 F. Supp. 2d at 231-32.

[26] *See* Jacobs, *Receivership Practice*, at 496-99 (describing practical tasks that a receiver must accomplish once appointed).

[27] *See, e.g.*, *In re First Woburn Bancorp., Inc.*, 1999 WL 33318823, at *1 (Del. Ch. Oct. 5, 1999) (holding "the Receiver's decision to seek a closing agreement from the I.R.S., while perhaps debatable, has the *prima facie* protection of the business judgment rule" and emphasizing that "[t]he Receiver's decision is entitled to the protective presumption of the business judgment rule in the absence of any persuasive evidence of bad faith, self-dealing, gross negligence, or any other reason justifying removal of that protection"); *see also Badii* ex rel. *Badii v. Metro. Hospice, Inc.*, 2012 WL 764961, at *11 (Del. Ch. Mar. 12, 2012)

powers that otherwise would rest with the board of directors, a strong argument could be made that the standard of review should be at least as deferential as the standard that would apply to the board's decision in the same context. To that end, decisions appointing receivers or custodians frequently establish a standard of review that will govern particular types of actions.[28] This decision has not addressed any context other than an appeal from a receiver's decision disallowing a claim. A ruling on the standard of review that would apply in a different context must await a concrete case where that issue is presented.

Having determined that *de novo* review of the Receiver's decision is warranted, the next step is to address the substance of the claim. In my view, the Receiver reached the right conclusion for the wrong reasons.

In rejecting Gentile's claim, the Receiver relied on the statute of limitations for contract claims under New York law. As a court of equity, the Court of Chancery is not

---

("In performing these tasks, the receiver may exercise independent business judgment to implement, in relation to the IRS offer, or recommend otherwise whatever steps he or she determines, in good faith, will maximize the value of the Company for its various stakeholders under the circumstances.").

[28] *See, e.g.*, *Jagodzinski v. Silicon Valley Innovation Co., LLC*, 2012 WL 593605, at *2 (Del. Ch. Feb. 14, 2012) ("With respect to matters in which the interests of all members are implicated, the decisions of the Receiver shall be subject to review and reversal by the Court only on a showing that the Receiver acted in bad faith, in violation of his fiduciary duties, or clearly outside the scope of his authority. The Receiver shall be presumed to have acted in good faith, reasonably, and in compliance with his fiduciary duties.").

bound by statutes of limitation.[29] Instead, it applies the doctrine of laches. That said, "[i]n determining whether an action is barred by laches, the Court of Chancery will normally, but not invariably, apply the period of limitations by analogy as a measure of the period of time in which it is reasonable to file suit."[30] Consequently, "[a] filing after the expiration of the analogous limitations period is presumptively an unreasonable delay for purposes of laches."[31] "[I]f unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer period than that fixed by the statute" then the court may "determine the extraordinary case in accordance with the equities which condition it."[32]

To determine the applicable statute of limitations for a breach of contract claim, a Delaware court looks first to the terms of the contract.[33] The Receiver applied New York's statute of limitations because the contract selected New York law. That was logical, but incorrect. "[C]hoice-of-law provisions in contracts do not apply to statutes of limitations, unless a provision expressly includes it. If no provision expressly includes it, then the law

---

[29] *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009) ("Although both laches and statutes of limitation operate to time-bar suits, the limitations of actions applicable in a court of law are not controlling in equity.").

[30] *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 769 (Del. 2013).

[31] *Id.*

[32] *Wright v. Scotton*, 121 A. 69, 73 (Del. 1923).

[33] *See Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017).

of the forum applies because the statute of limitations is a procedural matter."[34] The choice-of-law provision in the Employment Agreement states: "This Agreement shall be governed and construed in accordance with the laws of the State of New York, without reference to principles of conflict of laws thereunder."[35] Because it does not expressly apply New York's statute of limitations, the contract provision is not dispositive.

Absent a specific contractual statute of limitations provision, a Delaware court follows a multistep process to identify the applicable statute of limitations. Relevant factors include the nature of the claim and where it arose. The analysis begins with Delaware's Borrowing Statute.[36] In substance, it states that if claim arose in a jurisdiction that has a shorter statute of limitations than Delaware, then the court should use the shorter period. The Borrowing Statute does not apply here, because New York's six-year statute of limitations for breach of contract claims is longer than Delaware's three-year statute.[37]

---

[34] *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *3 (Del. Super. Dec. 29, 2015) (footnote omitted). *See generally* John F. Coyle, *The Cannons of Construction for Choice-of-Law Clauses*, 92 Wash. L. Rev. 631, 649 (2017) ("[M]ost U.S. courts have held that statutes of limitations are procedural and hence not covered by a generic choice-of-law clause.").

[35] Mot., Ex. 1 § 13.1.

[36] 10 *Del. C.* § 8121. *See, e.g.*, *Bear Stearns Mortg. Funding Tr. 2006-SLI v. EMC Mortg. LLC*, 2015 WL 139731, at *9 (Del. Ch. Jan. 12, 2015). For insightful commentary on the Borrowing Statute, see Dylan Consla & Brandon Mordue, *Stop Borrowing Trouble: Clarifying The* Saudi Basic *Exception to Delaware's Borrowing Statute*, 41 Del. J. Corp. L. 29 (2016).

[37] *Compare* N.Y. C.P.L.R. 213(2) *with* 10 *Del. C.* § 8016(a).

If the Borrowing Statute does not apply, then a Delaware court follows Delaware's general choice-of-law rules to select the operative statute of limitations.[38] The governing inquiry is "the most significant relationship test set forth in the Restatement (Second) of Conflicts of Laws."[39] This test requires that the court evaluate five fact-intensive factors "in deciding which state has the most significant relationship."[40]

The limited record created before the Receiver does not provide sufficient information to conduct the necessary analysis, although it strongly suggests that New York's statute of limitations would apply. Under the *de novo* standard of review that governs this appeal, the court could conduct further proceedings to determine the operative limitations period. In this case, however, the current uncertainty does not require further proceedings. New York's statute of limitations is the longest period that potentially could apply, and even under that statute of limitations, Gentile's claim remains time-barred.

As noted, New York's statute of limitations for a claim for breach of a written contract is six years.[41] "Generally, any Statute of Limitations begins to run when a cause of action accrues. In New York, a breach of contract cause of action accrues at the time of

---

[38] *Bear Stearns*, 2015 WL 139731, at *9 (internal quotation marks omitted) (quoting *In re Washington Mut., Inc.*, 2010 WL 3238903, at *6 (Bankr. D. Del. Aug. 13, 2010).

[39] *Id.*

[40] *Certain Underwriters*, 160 A.3d at 465.

[41] N.Y. C.P.L.R. 213(2).

the breach."[42] Gentile entered into the Employment Agreement on March 4, 2008. He asserts the Company stopped paying him on February 16, 2009. He resigned as CEO on June 18, 2010. On July 2, his attorney sent the Company a letter demanding the same $497,739 that Gentile now seeks in his claim. Given these facts, the latest date on which Gentile's claim could have accrued is June 18, 2010, when he resigned from the Company. Six years from that date is June 18, 2016. Gentile did not submit his claim until more than eight months later, on February 14, 2017. Absent any basis for tolling, Gentile's claim is barred even under New York's generous statute of limitations.

Gentile seeks to invoke several bases for tolling. "Normally, when a foreign jurisdiction's limitations period is found to apply, that jurisdiction's tolling laws will also apply."[43] Gentile argues that under New York law, the limitations period was tolled (i) by his filling of a previous suit, (ii) by the Company's subsequent re-affirmance of the debt, and (iii) as a matter of equity. None of these arguments succeed.

Under New York law, the filing of an action that is later discontinued voluntarily does not toll the limitations period.[44] On November 22, 2010, Gentile filed suit against the

---

[42] *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 615 N.E.2d 985, 986 (N.Y. 1993).

[43] *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1184 (9th Cir. 2009) (citing Restatement (Second) of Conflict of Laws § 142 cmt. f (1971)).

[44] *See* N.Y. C.P.L.R. 205(a) (stating that actions terminated by voluntary discontinuance are not eligible for tolling); *George v. Mt. Sinai Hosp.*, 390 N.E.2d 1156, 1159-61 (N.Y. 1979) (explaining operation of statute).

Company in the Supreme Court of the State of New York for breach of the Employment Agreement. On August 24, 2011, the parties filed a Stipulation to Arbitrate Dispute and a Stipulation of Discontinuance. Gentile has not produced any evidence that the dispute was arbitrated or resulted in further litigation.[45] Because the New York action was discontinued, it did not toll the statute of limitations.

Under New York law, "[a]n acknowledgement or promise to perform a previously defaulted contract . . . restart[s] the statute of limitations."[46] The Company did not promise to perform. Gentile has pointed to a Form 10-K dated April 23, 2010, in which the Company acknowledged that it "owe[d] Mr. Gentile approximately $200,000 under his employment agreement for 2009."[47] Accepting that this disclosure restarted the statute of limitations on April 23, 2010, it ran six years later, on April 23, 2016. Gentile filed his claim on February 14, 2017.

Finally, equitable tolling does not apply. New York law recognizes only three "well-settled and limited" occasions when the doctrine operates: "(1) the plaintiff timely filed the

---

[45] Dkt. 60 (containing email from Gentile admitting the evidence of the New York lawsuit is "all that [his attorneys] found").

[46] *Guilbert v. Gardner*, 480 F.3d 140, 149-50 (2d Cir. 2007) (applying New York law); *see also Lew Morris Demolition Co., Inc. v. Bd. of Ed.*, 355 N.E.2d 369, 371 (N.Y. 1976) (noting New York has replaced the common law, now requiring a writing which "recognize[s] an existing debt and . . . contain[s] nothing inconsistent with an intention on the part of the debtor to pay it").

[47] Dkt. 53, Ex. 3.

complaint in the wrong forum, (2) the defendant actively misled the plaintiff, or (3) the plaintiff in some extraordinary way had been prevented from complying with the limitations period."[48] The first indisputably does not apply. The second and third do not apply either. The Company did not do anything to mislead Gentile or to prevent him from prosecuting his claim. He previously sued in New York, but then he chose not to pursue the litigation to its conclusion.

In sum, the Receiver correctly determined that Gentile's claim is barred by the statute of limitations. The Receiver reached this result erroneously by looking to the choice-of-law provision in the Employment Agreement and applying New York's statute of limitations directly. This decision has reached the same result by applying the doctrine of laches, using the statutory limitations period as the presumptive period for the laches analysis, attempting a choice-of-law analysis, assuming that New York's limitations period would apply because it is the most generous to Gentile, and finding that the statutory period ran before Gentile filed his claim. Consequently, after conducting a *de novo* review on the record developed before the Receiver, this court overrules Gentile's exceptions. The Receiver's motion to confirm is granted. This court adopts the Receiver's determination as a decision of this court.

---

[48] *O'Hara v. Bayliner*, 679 N.E.2d 1049, 1054 (N.Y. 1997).