**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

Paul A. Fioravanti, Jr.
Vice Chancellor

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: November 2, 2020
Date Decided: January 28, 2021

John G. Harris, Esquire
Berger Harris LLP
1105 N. Market Street, Suite 1100
Wilmington, DE 19801

S. Michael Sirkin, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Jason C. Powell, Esquire
The Powell Firm, LLC
1201 N. Orange Street, Suite 500
P.O. Box 289
Wilmington, DE 19899

> RE: *In re Dissolution of Jeffco Mgmt., LLC,*
> C.A. No. 2018-0027-PAF

Dear Counsel:

The court has reviewed the submissions that the court had requested concerning Jeffrey Tabak's position on seeking arbitration and the standard of review governing the exceptions to the receiver's determinations in winding up Jeffco Management, LLC ("Jeffco"). Having carefully considered the submissions of the members and the receiver, the court has determined to conduct a hearing to give the receiver and the members of Jeffco an opportunity to address the specific exceptions by way of argument, presentation of evidence that is already in the record, and limited witness testimony.

This letter discusses the appropriate standard of review for Tabak's various exceptions, identifies certain issues that the parties should be prepared to address at the hearing, and explains the scope of the proceeding.

## I.      Background

This dispute involves the receivership and winding up of Jeffco, a Delaware LLC formed for the purpose of operating a broker/dealer business. Jeffco has two equal managing members, Jeffrey Miller and Jeffrey Tabak (together, the "Members"). In recent years, the relationship between Miller and Tabak has deteriorated, and they have been unable to carry on as business partners. Due to disagreement and deadlock between the two equal members, on March 26, 2018, the court granted a decree of judicial dissolution of Jeffco. On March 12, 2019, the court then entered an order appointing Jason Powell, Esquire (the "Receiver") as an independent receiver to wind up the affairs of Jeffco (the "Receivership Order").

The Receiver was given "full authority over the business and affairs of Jeffco." Receivership Order ¶ 1. The Receivership Order directed the Receiver to confer with the Members and to submit a proposed plan of dissolution that would "provide for the prompt distribution of Jeffco's assets and the winding up of its affairs." Receivership Order ¶ 2. The Receiver's plan of dissolution would be "subject to Court approval." Receivership Order ¶ 3. The Receivership Order did

not otherwise provide any detailed instructions or establish a standard of review for the Receiver's decisions.

The Receiver spent the next several months gathering and analyzing Jeffco's financial information, formulating a proposed plan of distribution, and corresponding with the Members about any issues regarding distribution. On November 1, 2019, the Receiver filed a Motion to Approve Plan of Distribution and Dissolution for Jeffco Management, LLC and for Related Relief (the "Motion"). The Receiver determined that "Jeffco is unsaleable/illiquid and any distribution of its assets to the Member(s) would involve an in-kind distribution." Motion ¶ 4(g). The Receiver concluded that there are no outstanding liabilities or claims against Jeffco. *Id.* ¶ 9. The Receiver also found that "[t]he Capital Accounts, per the documents and information reviewed by the Receiver, indicate that Jeffrey Miller's Capital Account is positive, while Jeffrey Tabak's Capital Account is negative." *Id.* ¶ 11. In conclusion, the Receiver proposed to distribute all of Jeffco's assets in kind to Miller. *Id.*

On March 12, 2020, the court entered an Agreed Order to Approve Receiver's Motion (the "Agreed Order"), which established procedures for submitting objections to the Receiver's plan of distribution. On April 24, 2020, Tabak

submitted several objections to the plan (the "Objections Letter").[1]  As required by

the Agreed Order, the Receiver filed his report in response to Tabak's objections

(the "Receiver's Response").  Tabak and Miller each submitted a reply, and the

Court conducted a telephonic hearing on September 15, 2020 (the "September 15

Hearing").  At the hearing, the court requested supplemental briefing to address,

among other things, the appropriate standard of review and Tabak's argument that

the entire dispute is subject to mandatory arbitration under the terms of the Jeffco

LLC Agreement.[2]

## II.    Arbitration

As an initial matter, none of the disputes relating to the proposed plan of

distribution are subject to arbitration. To be sure, in supplemental briefing, Tabak

clarified that he is withdrawing his assertion that this matter is subject to arbitration.

*See* Tabak's Reply to the Receiver's Supp. Mem., at 1 ("Tabak's supplemental

memorandum states without reservation that he was withdrawing any previously

---

[1] The Agreed Order required objections to be filed within 25 days of the proposed plan being served upon the Members.  Agreed Order ¶ 5.  The Receiver served the Members on March 16, 2020, which would have placed the deadline for objections at April 10, 2020. *See* D.I. 40, Ex. A.

[2] *See* Objections Letter, at 2; Jeffco LLC Agreement § 14.12.

made claim for arbitration concerning the Court's treatment of the Receiver's proposed Plan.").[3]

### III.   The Standard of Review

Frequently, the applicable standard of review for a receiver's decisions is reflected in the order appointing the receiver. *See e.g.*, *In re TransPerfect Global, Inc.*, 2018 WL 904160, at \*1, \*6–7, \*14 (Del. Ch. Feb. 15, 2018) (observing that the court's order governing a custodian's authority to conduct a sale of the company specified that the custodian's decisions were governed by an abuse of discretion standard); *In re 14 Realty Corp.*, 2009 WL 2490902, at \*4 (Del. Ch. Aug. 4, 2009) (observing that the court's order governing a trustee's authority to wind up several entities specified that the trustee's decisions would be reviewed *de novo*); *In re Supreme Oil Co., Inc.*, 2015 WL 2455952, at \*6 (Del. Ch. May 22, 2015) (order appointing custodian and providing that interim actions of the custodian "shall be subject to review and reversal by the Court only on a showing that the Custodian abused his discretion"); *Jagodzinski v. Silicon Valley Innovation Co., LLC*, 2012 WL

---

[3] In light of Tabak's concession, the court need not decide whether Tabak waived any right to seek arbitration by having participated in these proceedings. *See Parfi Holding AB v. Mirror Image Internet, Inc.*, 842 A.2d 1245, 1260 n.39 (Del. Ch. 2004) ("[A] party may waive its right to arbitration by expressly waiving that right, actively participating in litigation as to an arbitrable claim, or otherwise taking action inconsistent with the right to arbitration.").

593605, at \*2 (Del. Ch. Feb. 14, 2012) (order appointing receiver and providing that as "to matters in which the interests of all members are implicated, the decisions of the Receiver shall be subject to review and reversal by the Court only on a showing that the Receiver acted in bad faith, in violation of his fiduciary duties, or clearly outside the scope of his authority"). In this case, the three-paragraph Receivership Order does not establish a standard of review for the Receiver's decisions.

In the absence of a standard of review in the order appointing the receiver, this court has looked to the relevant statutes, rules, and case law for guidance. *See, e.g., B.E. Capital Mgmt. Fund LP v. Fund.com Inc.*, 171 A.3d 140 (Del. Ch. 2017); *In re GR Burgr, LLC*, 2020 WL 6041970, at \*1 n.1 (Del. Ch. Oct. 13, 2020) (assuming without deciding that the standard is *de novo*, but acknowledging one party's argument that the standard should be abuse of discretion). The statute authorizing the appointment of a receiver for an LLC does not provide a standard of review. 6 *Del. C.* § 18-805. The applicable Court of Chancery Rules also do not specifically identify a standard of review. Ct. Ch. R. 148–168.[4] The Rules indicate,

---

[4] These are default rules that may be waived in the court's order appointing a receiver. Ct. Ch. R. 148; *see Dunnco Viii, LLC v. Auviso, Inc.*, 2020 WL 532716, at \*3 (Del. Ch. Jan. 31, 2020) ("The provisions of Court of Chancery Rules 149–168, pertaining to the duties of a receiver and/or trustee, are hereby waived."). The Receivership Order in this case did not mention the Rules, and thus Rules 149 through 168 are applicable.

however, that this court should hold a hearing on exceptions to a receiver's determinations as to claims and accounts. *See* Ct. Ch. R. 156 ("Exceptions to [a creditor's] claims . . . will be heard by the Court upon such notice to the receiver, creditor and exceptant as may be ordered by the Court."); Ct. Ch. R. 157 ("At the hearing of exceptions to claims and to accounts, the testimony of witnesses shall be taken in the same manner as is provided for in other causes pending in this Court."). These references to a "hearing" "'suggest that *de novo* hearings are permissible.'" *B.E. Capital*, 171 A.3d at 144 (quoting Jack B. Jacobs, *Delaware Receivers and Trustees: Unsung Ministers of Corporate Last Rites*, 7 Del. J. Corp. L. 251, 265 (1982)).

In *B.E. Capital*, the court explored the standard of review of a receiver's decisions, as well as the manner of review. *B.E. Capital*, 171 A.3d at 143–47. In that case, the court held that a receiver's decision to disallow a creditor's claim against a corporation pursuant to 8 *Del. C.* § 296 was subject to *de novo* review. In addition to considering the applicable Court of Chancery Rules, the court supported its decision by relying on the reference to a "hearing" in § 296, by citing previous cases where the court conducted a *de novo* review of a receiver's disallowance of a claim, and by recognizing that *de novo* review was inherent in historical receivership actions at common law. *B.E. Capital*, 171 A.3d at 144–46. The court also

analogized the receiver's denial of the claim to a master's ruling, which would be subject to *de novo* review. *Id.* at 146 ("When a receiver by order of court hears testimony and proof and rejects or allows a claim his action is closely analogous to that of a master." (internal quotation omitted)).

In reaching its conclusion that *de novo* is the applicable standard of review for a receiver's disallowance of a creditor's claim, however, the court acknowledged that a receiver may perform many other tasks.

> This decision has no cause to determine whether the *de novo* standard of review would apply in other contexts. To the contrary, in a situation where a receiver or custodian has exercised judgment regarding the business and affairs of a corporation, such as when selling assets or settling a claim, a more deferential standard of review would seem warranted. Indeed, where the receiver or custodian has exercised the powers that otherwise would rest with the board of directors, a strong argument could be made that the standard of review should be at least as deferential as the standard that would apply to the board's decision in the same context.

*B.E. Capital*, 171 A.3d at 146.

Applying a deferential standard of review to a receiver's business decisions also finds support in other decisions of this court. *See In re First Woburn Bancorp., Inc.*, 1999 WL 33318823, at *1 (Del. Ch. Oct. 5, 1999) (receiver's decision to seek agreement with I.R.S. was "entitled to the protective presumption of the business judgment rule in the absence of any persuasive evidence of bad faith, self-dealing,

gross negligence, or any other reason justifying removal of that protection"); *14 Realty Corp.*, 2009 WL 2490902, at *4 n.3 ("[*D*]*e novo* review of the determinations of a skilled and experienced trustee is duplicative and wasteful of judicial resources and parties' time and money. Were the standard of review closer to a business judgment standard—as it should have been—this motion could have been decided far more expeditiously and efficiently on the basis of the Trustee's well-reasoned determinations."); *Acela Investments LLC v. DiFalco*, 2020 WL 1987093, at *7 (Del. Ch. Apr. 27, 2020) ("[The Trustee] is indisputably independent and has no personal financial interest in the outcome of the sale process. He also possesses invaluable knowledge and insight gained over the past ten months of his tenure as Liquidating Trustee concerning, among other things, the Company's operations and finances as well as the capabilities of its stakeholders. It is for such reasons that this court routinely applies a deferential standard of review when the action of an agent of the court is challenged . . . .").

The Delaware LLC Act also lends support to the view that a receiver's business decisions are entitled to a deferential standard of review. For example, Section 18-805 authorizes a receiver "to take charge of the limited liability company's property . . . and to do all other acts which might be done by the limited liability company, if in being, that may be necessary for the final settlement of the

unfinished business of the limited liability company." Section 18-406 provides that "[a] member, manager, or liquidating trustee . . . shall be fully protected in relying in good faith" upon reasonably reliable records and other sources of information when making business decisions.

The Members and the Receiver generally agree that *B.E. Capital* provides an appropriate framework for determining the standard of review for a receiver's determination in the absence of a court-ordered standard. They disagree, however, as to its application to the Receiver's decisions that are the subject of Tabak's objections. Tabak contends that all of the challenged decisions are subject to *de novo* review. On the other hand, Miller and the Receiver urge the court to apply a deferential standard to the decisions.

In my view, each of the Receiver's challenged determinations should be analyzed independently. *See, e.g., 14 Realty Corp.*, 2009 WL 2490902, at *7–13 (considering separately three discrete determinations made by a Trustee). Even in the absence of a court order establishing the standard of review, certain determinations may be subject to *de novo* review and other determinations may receive a deferential review, depending on the nature of the determination. *See Badii ex rel. Badii v. Metro. Hospice, Inc.*, 2012 WL 764961, at *11 (Del. Ch. Mar. 12, 2012) (appointing a receiver and directing the receiver to exercise independent

business judgment to settle a federal tax liability but to make recommendations to the court to resolve creditor and shareholder claims).

At this stage, I am persuaded that the Receiver's decision to deny Tabak's claim for $60,000 in advanced expenses and the Receiver's conclusion that Tabak has a negative capital account balance are subject to *de novo* review.[5] The Receiver's other decisions that are the subject of Tabak's objections, such as not to conduct a valuation of Jeffco's assets and to distribute the assets in kind, appear to fall into the category of discretionary business decisions permitted under the Jeffco LLC Agreement. The Members and the Receiver will have an opportunity to present their respective arguments as to the appropriate standard(s) of review on the objections to these other decisions at the upcoming hearing.

## IV.    Hearing and Evidence

Even as to decisions that are subject to *de novo* review, the court is not required to hold an evidentiary hearing. As the *B.E. Capital* court explained, "when

---

[5] At the September 15 hearing, Tabak's counsel asserted that Tabak has a claim for $300,000 from a subordinated loan that Tabak made in 2013. Oral Arg. at 28. However, Tabak did not raise this issue in his Objections Letter, and this claim is time-barred. Agreed Order ¶ 8 ("Any Public Claims, Member Objections or any other opposition to the dissolution of Jeffco and the Distribution Plan, or any claim in tort or contract which any person or party may have against Jeffco which is not timely served or filed, as applicable, in accordance with the procedures set forth herein shall be forever barred."). This letter expresses no opinion as to Tabak's alternative argument that the $300,000 was a capital contribution.

a court considers an appeal from a receiver's disallowance of a claim . . . , the standard of review is *de novo*, and the court has discretion as to whether to go beyond the record presented to the receiver by conducting an evidentiary hearing." *B.E. Capital*, 171 A.3d at 144.

In conducting a *de novo* review on the record, the court has discretion to "hear the evidence anew, either as to all the issues or as to designated issues only." *In re Collins' Will*, 251 A.2d 345, 346–47 (Del. 1969) (affirming Orphans' Court's review of a decision by the Register of Wills). When this court conducts *de novo* review of a master's report, "[o]nly where exceptions raise a *bona fide* issue as to dispositive credibility determinations will a new hearing be inevitable. In those cases the new hearing can be limited to the witness or witnesses whose credibility is at issue." *DiGiacobbe*, 743 A.2d at 184.

Although the record is unclear, it appears that the Receiver's decisions regarding 1) Tabak's $60,000 claim and 2) Tabak's capital account balance may have involved credibility determinations. As to the capital accounts, the Receiver credited the tax returns and other contemporaneous financial records over the revised calculations provided by Tabak. The revised calculations included a cover sheet addressed to the Receiver from Constantine Sophos of Citrin Cooperman, Jeffco's accountant, along with supporting financial records. Sophos stated that he prepared

the revision of the capital accounts "based on documents provided to me by Jeffrey Tabak." Receiver's Exhibits, Ex. H. The Receiver dismissed Sophos's revised report as unreliable, equating it with a litigation-driven expert report. Receiver's Response ¶ 27 ("Courts have rejected expert analysis done contemporaneously with litigation as an unreliable source." (citing *Owen v. Cannon*, 2015 WL 3819204, at *22 (Del. Ch. June 17, 2015)). Tabak's evidence, however, is not an expert's estimation of future financial projections. *Cf. Owen*, 2015 WL 3819204, at *21–22 (discussing cases where the courts discounted experts' forecasts that were inconsistent with contemporaneous management projections). Rather, Tabak's evidence is a recitation of facts that conflicts with the story that is told through the tax returns and the contemporaneous financial documents.

The record before the court does not clearly reflect that the Receiver's decision rested upon a dispositive credibility determination, which would require witness testimony. *See DiGiacobbe*, 743 A.2d at 184 (holding that a new hearing only becomes necessary if the credibility determination is dispositive). I also note that a credibility determination is not dispositive if there are "objective facts in the record that support the Master's findings." *In re Real Estate of Jamies's L.L.C.*, 2006 WL 644473 at *6 (Del. Ch. Mar. 1, 2006).

At the September 15 Hearing, it became evident that the parties had anticipated making detailed, fact-intensive arguments based on the financial records that could not be fully explored in the 90 minutes allotted for argument, and that issues over the standard of review needed further exploration. The Members and the Receiver should be afforded a full opportunity to present their arguments as to the objections, as contemplated by the Agreed Order.

Having reviewed the objections and the submissions of the Members and the Receiver, the only issues that might turn on a credibility determination are Tabak's objections as to the Receiver's treatment of his claim for $60,000 and of his capital account balance. Accordingly, the court will permit Tabak to testify at the hearing in support of those objections and to present testimony from Sophos. Those witnesses will be subject to cross-examination. *See* Ct. Ch. R. 157.

The documentary evidence will be limited to the current record. The parties have had ample opportunity to submit evidence. Tabak did not serve any discovery requests. For six months, the Receiver repeatedly extended deadlines for submitting evidence and for responding to the other party's submissions, including at the request of both Tabak and Tabak's counsel. Even after the Receiver filed his Motion, the parties had multiple opportunities to present additional information to

the court. Tabak and Miller have already submitted numerous records that shed light on Tabak's objections, and I am not persuaded to reopen the documentary record.

Pursuant to the foregoing, the Members and the Receiver will have the opportunity to argue the objections to the Receiver's Motion, including as to the standard of review, and Tabak will be afforded the opportunity to present his testimony as outlined above. The Members and the Receiver should also address whether any of the arguments presented in the objections have been waived or are barred as untimely. The parties shall confer and contact chambers to schedule a hearing as soon as reasonably practicable.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor