**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

April 7, 2022

Neal J. Levitsky, Esquire
Kasey H. DeSantis, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 300
Wilmington, DE 19801

Michael L. Vild, Esquire
Cross & Simon, LLC
1105 N. Market Street, Suite 901
Wilmington, DE 19801

Gary F. Seitz, Esquire
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street, 3rd Floor
Wilmington, DE 19801

> Re:   *Grassi Fund Administration Services, Inc. v. Crederian, LLC,*
>        C.A. No. 2020-0748-KSJM

Dear Counsel:

This letter decision resolves the objection of petitioner Grassi Fund Administration Services, Inc. ("Petitioner") to the Liquidating Trustee's Report and Recommendation for Relief (the "Report").[1]

Petitioner and Crederian, LLC ("Respondent") together formed Crederian Fund Services, LLC (the "Company") "to provide accounting and compliance services to investment fund accounts."[2] Due to irreconcilable differences, Petitioner sought dissolution of the Company and entered arbitration as provided for in the Company's

---

[1] *See* C.A. No. 2020-0748-KSJM, Docket ("Dkt.") 49, Report of Liquidating Trustee & Recommendation for Relief (Report); Dkt. 53, Pet'r's Obj. to the Report of Liquidating Trustee & Recommendation for Relief ("Objection").

[2] Objection ¶ 1.

Operating Agreement.[3]  The arbitration tribunal issued a decision on liability (the "Liability Decision") and a decision and final award (the "Final Award"),[4] which Petitioner sought to enforce in this court.[5]  On December 4, 2020, the court confirmed the results of the arbitration proceeding and ordered that the Company be wound up and dissolved.[6]  On February 9, 2021, the court appointed Gary Seitz as Liquidating Trustee.[7]

The Liquidating Trustee recovered $68,136.47 and submitted the Report on December 20, 2021.[8]

The Report recommended that the court order the Liquidating Trustee to pay the recovered sum as follows: $26,702.00 in fees and $262.29 for expenses to the Liquidating Trustee; $35,514.37 in unpaid salary to Eugene Grace; and the remaining balance of $5,657.85 to the Company's landlord, Rosetree KPG III, LLC (the "Landlord").[9]  The Liquidating Trustee further concluded that although he may be able to obtain additional recovery, "the meager sums obtained through the liquidation and the lack of interest of any contingent fee firms known to the Trustee prevent the ability to mount any liquidation

---

[3] *Id.* ¶ 2.

[4] Dkt. 1, Ex. A.  Exhibit A to the Verified Petition to Confirm Arbitration Award includes both the Liability Decision (pages 2 through 33) and Final Award (pages 34 through 96). This decision cites to the internal pagination of the individual decisions and not the pagination of the exhibit.

[5] Objection ¶¶ 2–3.

[6] Dkt. 33 ¶ 1.

[7] Dkt. 41 ¶ 2.

[8] Report at 3.

[9] *Id.* at 8.

litigation in this case."[10]  The Liquidating Trustee concluded that "[d]ue to the lack of resources, [he] is unable to further investigate or pursue any liquidation litigation suggested by the parties."[11]

Petitioner initially asserted three objections to the Report, but Petitioner collapsed two of its objections into one during oral argument.[12]  Petitioner first argues that the Liquidating Trustee failed to provide documents supporting the claims of Eugene Grace (the "Salary Claim").[13]  Petitioner next argues that the Liquidating Trustee improperly subordinated Petitioner's claims in favor of the Landlord's claim under the lease agreement (the "Lease Claim"), and that the Liquidating Trustee failed to consider Respondent's joint and several liability under the lease agreement for the Lease Claim.[14]  Petitioner's first objection concerns $35,514.37.  Petitioner's second objection concerns $5,657.85.

The parties dispute what standard of review applies to Petitioner's objections.[15]  Petitioner argues that *de novo* review is appropriate.  Respondent argues that a more deferential standard is appropriate.

---

[10] *Id.* at 4

[11] *Id.* at 5.

[12] Dkt. 62 ("Oral Arg. Tr.") 14:10–15 ("THE COURT: So this is really about, assuming we can find support or I find at that point Mr. Grace's claim is supported, it's really about the remaining 5,000-plus dollars.  ATTORNEY DESANTIS: Yes, that's correct.").

[13] Objection ¶¶ 21–25.

[14] *Id.* ¶¶ 26–37.

[15] *Id.* ¶ 12; Dkt. 56, Resp't's Response to the Pet'r's Obj. to the Report of Liquidating Tr. & Recommendation for Relief ("Response") ¶ 3.

Vice Chancellor Fioravanti addressed this issue in *In re Dissolution of Jeffco Management LLC*, observing that while a receiver's decision to disallow a creditor's claim is reviewed *de novo*, a receiver's business decisions are subject to a more deferential standard.[16] This decision does not repeat the Vice Chancellor's scholarly analysis. Applying the holding of *Jeffco* here and giving Petitioner the benefit of a close call, I review the Liquidating Trustee's determinations *de novo* because the priority assigned to the Salary Claim and the Lease Claim had the effect of depriving Petitioner of any recovery through the liquidation.

Under a *de novo* standard of review, the court "ma[kes] a careful and independent review of both the factual findings and the conclusions of law."[17] "Although *de novo* review generally means a new trial or hearing on questions of fact, it is equally possible to conduct a review *de novo* on the record."[18]

In this case, the parties did not submit to an evidentiary hearing.[19] Given the extremely narrow scope of Petitioner's objections and the limited amount in controversy,

---

[16] *See In re Dissolution of Jeffco Mgmt., LLC*, 2021 WL 282634, at *2–4 (Del. Ch. Jan. 28, 2021) (discussing *B.E. Cap. Mgmt. Fund LP v. Fund.com Inc.*, 171 A.3d 140 (Del. Ch. 2017) and other cases).

[17] *In re Reardon*, 759 A.2d 568, 575 (Del. 2000).

[18] *B.E. Cap. Mgmt. Fund LP*, 171 A.3d at 144 (internal quotation marks and citation omitted).

[19] Neither party requested an evidentiary hearing. Petitioner asked the court to reject the Liquidating Trustee's Report and "adopt a plan consistent with the findings of the Final Award." Objection ¶ 8; *see also id.* ¶ 12. Respondent asked the court to accept the Report. Response ¶ 23 (stating that "the Respondent respectfully and reluctantly requests that the Court accept the Trustee's Report and overrule the Objections").

this was a reasonable decision. The parties rely significantly on the arbitration tribunal's factual findings, which resulted in the Liability Decision and the Final Award confirmed by this court.[20] The parties dispute whether the Liquidating Trustee acted appropriately in implementing aspects of the arbitration tribunal's findings, and this court will review the challenged decisions *de novo*. The court, however, does not review the factual findings of the arbitration tribunal *de novo*; those findings have been confirmed by this court and are binding.

As to the Salary Claim, Petitioner does not object to the Liquidating Trustee's recommendation to pay Grace's unpaid salary.[21] Rather, Petitioner questions whether the amount Grace seeks is unpaid salary for work performed, as opposed to payment from some other arrangement with Respondent.[22] Petitioner phrases its request strangely by asking Respondent to prove a negative—that no document exists proving Grace is not entitled to his unpaid salary.[23] The arbitration tribunal already resolved the issue of Grace's

---

[20] Dkt. 33 ¶ 1 (ordering that "[a]ll aspects of the Arbitration Proceeding between the parties are hereby CONFIRMED").

[21] Objection ¶ 21.

[22] *Id.* (objecting to the Report "to the extent the Liquidating Trustee recommends payment to Eugene Grace for unpaid salary in the amount of $35,514.37 *without any supporting evidence for the claim*" (emphasis added)).

[23] Oral Arg. Tr. 9:2–5.

entitlement.[24]   As discussed above, that finding is binding.  Petitioner's objection to the Salary Claim is therefore overruled.

As to the Lease Claim, Petitioner first argues that Respondent should be liable for the Lease Claim instead of the Company "because Respondent is jointly and severally liable under the terms of the lease agreement,"[25] and Petitioner next argues that the Liquidating Trustee improperly subordinated its claims to the Lease Claim.

Petitioner's first argument is unpersuasive.  The Landlord is owed $347,713.96 by the Company, far more than the Liquidating Trustee recommends paying the Landlord;[26] Petitioner does not dispute this fact.[27]  Instead, Petitioner argues that the Landlord should have to chase Respondents for amounts owed jointly and severally by the Company.

---

[24] Final Award at 17 (ordering that "[t]he LLC shall pay Mr. Grace any unpaid amounts of his regular base salary through the date of the termination of his employements [sic] with the LLC (but no later than April 30, 2020), at the salary rate he was earning as of the last pay period in which he was paid, provided that the rate of pay shall not exceed his rate of pay for the 12 preceding months"); *Id.* at 29 (awarding "[u]npaid salary of $35,514.37 to Eugene Grace, which shall be paid only in the final distribution of the assets of the LLC, but before any distribution to either Member, provided, however, that such salary shall be paid sooner to the extent required by law").  Petitioner's objection to the Salary Claim is a repeat of the objection it made during the arbitration.  *Id.* at 17 ("[Petitioner] opposes these applications on the basis that Crederian has failed to supply sufficient information regarding Mr. Grace's salary and the employee flexible spending account.").  The arbitration tribunal rejected Petitioner's objections, finding that "there is sufficient information in the record to dispose of these matters." *Id.*

[25] Objection ¶ 27.

[26] Report at 6–7, 9.

[27] *See* Objection ¶ 27 (arguing that "[t]he Company should not be liable for the Landlord's claims" and that "Respondent alone should be liable for the Landlord's claims because Respondent is jointly and severally liable under the terms of the lease agreement").

Petitioner provides no support for this supposition.[28] Petitioner points to no factual or legal basis for me to deny the Lease Claim outright, which would be the practical effect of the court accepting Petitioner's argument.[29]

Petitioner's next argument also misses the mark. Petitioner asserts that the Liquidating Trustee improperly subordinated its claims based upon an unsupported assertion by Respondent.[30] Petitioner notes that the Final Award (i) found that Petitioner was entitled to a credit of half of $297,000 for payments it made to subcontractors[31] and to $275,000 in fees paid to the Company,[32] and (ii) awarded Petitioner $30,000, which was the administrative fee stated in the operating agreement.[33]

Petitioner selects too carefully from the Liability Decision and Final Award, omitting adverse facts and findings that cut against Petitioner's position. For example, the arbitration tribunal stated in the Liability Decision that the parties are to "make best efforts to minimize fees and expenses resulting from the wind-down of the LLC" including with

---

[28] *See id.*

[29] *See* Report at 6–7 (stating that the Landlord is seeking $347,713.96 in the lease claim against the Company).

[30] Oral Arg. Tr. 13:4–7.

[31] Final Award at 10.

[32] *Id.* at 29.

[33] *Id.* at 8 (finding Petitioner is "entitled to the administrative fees provided in Schedule B to the LLC Agreement for each month from the inception of the LLC through April 30, 2020, including any such administrative fees that were unpaid as of the December 2018 drawdown").

respect to the lease.[34]  After the Liability Decision, however, the parties failed to use best efforts to minimize fees in connection with the Lease.

After the Liability Decision, the parties corresponded on how to terminate the lease, arriving at a draft email to send to the Landlord.[35]  The next day, Petitioner's counsel scuttled the negotiations, stating that after "consult[ing] with [his] client, [they] do not believe that any communication with the landlord is appropriate, at this time" and that Respondent should "recall that neither Member is authorized to speak to the landlord about the lease independently."[36]  Respondent raised the dispute with the arbitration tribunal.  In response, Petitioner explained that "Members of the Joint Venture have no liability for the Joint Venture" and that "[t]he Landlord would also have an obligation to mitigate any damages for lost rent if the lease were terminated immediately, which may result in no claim against the Joint Venture for lost rent."[37]

The arbitration tribunal held a conference call to address the parties' dispute concerning the lease and other issues.[38]  After that call, Respondent drafted a new email to

---

[34] Liability Decision at 58–59; *see also id.* at 57 (directing that, "[i]f any contract or other commitment cannot be terminated effective April 30, 2020, the Members shall make commercially reasonable efforts to effectuate a termination at the earliest possible date").

[35] Dkt. 56, Ex. F at 6.

[36] *Id.*

[37] *Id.* at 13.

[38] Final Award at 3; *see* Dkt. 56, Ex. F at 8 (stating that "[t]here is an urgent matter that we would like to bring to the Panel's attention. The Joint Venture's landlord has emailed Mr. Ciavardini about the unpaid June rent and asked him to respond").

the Landlord for Petitioner's review, and Petitioner responded through counsel stating that a call with the Landlord would not be productive.[39]

The arbitration tribunal later issued its Final Award, requiring the parties to "take such steps as are necessary to terminate ongoing services contracts and other commitments, including . . . lease commitments, effective to the extent feasible April 30, 2020, except as may be required in the Members' joint interest."[40]

During the time period when Petitioner failed to cooperate in communications concerning terminating the lease, the Company remained a tenant but was unable to pay rent.[41] The Company's failure to pay rent caused the Landlord to levy interest and penalty charges against the Company and file a breach of contract claim against the Company and Respondent.[42]

---

[39] Dkt. 56, Ex. F at 18.

[40] Final Award at 25; Liability Decision at 58–59 (requiring the parties to "make best efforts to minimize fees and expenses resulting from the wind-down of the LLC" including with respect to the lease).

[41] Withdrawing funds from the LLC's bank accounts required both Members' consent. *See* Final Award at 17 ("Except as specifically provided in this paragraph, no other funds shall be taken from the accounts of the LLC, except by agreement of the Members or order of a court, liquidating trustee, or other referee."). Petitioner refused to provide its consent, instead asking Respondent to tell the Landlord "that the company is in the midst of winding down and . . . will be evaluating all claims of potential creditors as part of that process." Dkt. 56, Ex. F at 18; *see also* Final Award at 6 (finding that Petitioner "may have violated orders of the Pennsylvania court providing for the deposit of collected client accounts receivable into the LLC's bank account").

[42] *See* Dkt. 56, Ex. C at 2; Dkt. 56, Ex. D at 1, 5.

Summing it up, Petitioner was obligated to help terminate the existing lease. Petitioner's failure to cooperate contributed to additional liability. These facts support a finding that Petitioner is at least partially responsible for the Lease Claim.

Accordingly, it is appropriate to subordinate Petitioner's claims under one of two equitable doctrines—equitable subordination[43] or unclean hands.[44] Petitioner's actions contributed to additional rent, penalty, and interest payments owed to the Landlord.

Although the effect of Petitioner's actions on the Lease Claim is not easily quantifiable, Petitioner's actions caused an increase in the amount of the claim of at least more than half of the remaining balance of the recovered sum, $5,657.85, which is the most that Petitioner would otherwise be entitled to.[45]

---

[43] "Equitable subordination is a doctrine that, based on a creditor's inequitable conduct and its effect on other creditors, allows that creditor's debt to be subordinated to other claims in bankruptcy or allows the creditor's liens to be transferred to the bankruptcy estate." *Nelson v. Emerson*, 2008 WL 1961150, at *4 n.13 (Del. Ch. May 6, 2008) (citations omitted).

[44] "The doctrine of unclean hands is [e]quity's maxim that a suitor who engaged in his own reprehensible conduct in the course of [a] transaction at issue must be denied equitable relief . . . ." *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 875–76 (Del. 2015) (internal quotation marks and citation omitted). "Ultimately, the doctrine is about public policy, and the Court has the broad discretion to refuse relief if [a party] can establish that [the other party] does not meet a very basic though inexact standard: 'where the litigant's own acts offend the very sense of equity to which he appeals.'" *Universal Enter. Gp., L.P. v. Duncan Petro. Corp.*, 2014 WL 1760023, at *7 (Del. Ch. Apr. 29, 2014) (quoting *Merck & Co., Inc. v. SmithKline Beecham Pharm. Co.*, 1999 WL 669354, at *45 (Del. Ch. Aug. 5, 1999)).

[45] The Landlord stated in its Pennsylvania Court of Common Pleas Complaint that it is owed $30,937.33 in outstanding rent through August 2020, and $316,776.63 in accelerated rent. Dkt. 56, Ex. D ¶ 34.

Accordingly, Petitioner's objections are overruled.  The court adopts the Report in full.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:     All counsel of record (by *File & ServeXpress*)